# STATE OF MICHIGAN

# COURT OF APPEALS

PROTECTING MICHIGAN TAXPAYERS,
JEFFREY WIGGINS, TONY DAUNT, and
JEFFREY RAZET

FOR PUBLICATION
May 11, 2018
9:00 a.m.

        Plaintiffs,

v

No. 343566

BOARD OF STATE CANVASSERS,
DIRECTOR OF ELECTIONS, and SECRETARY
OF STATE,

        Defendants,

and

PROTECT MICHIGAN JOBS,

        Intervenor.

Before: GLEICHER, P.J., and O'CONNELL and TUKEL, JJ.

GLEICHER, P.J.

The issue presented is whether the Board of State Canvassers has a clear legal duty to certify an initiative petition despite that some of the petition circulators may have claimed fraudulent residential addresses. The statutory sanctions for any such irregularities do not include disqualifying elector signatures. We grant the plaintiff's complaint for mandamus and direct the Board of Canvassers to certify the petition.

I

The plaintiff, Protecting Michigan Taxpayers, is an organized ballot question committee that seeks to repeal Michigan's prevailing wage act, MCL 408.551 *et seq*. The act regulates the terms and conditions of employment for workers employed on state construction projects. The intervenor, Protect Michigan Jobs, is a ballot question committee formed to oppose the efforts of Protecting Michigan Taxpayers. Because the names and initials of the two parties are similar, we refer to the plaintiffs as Taxpayers and the intervenors as Jobs.

-1-

Michigan's Constitution grants our citizens the right to enact or repeal laws through a ballot initiative process. Const 1963, art 2, § 9. Proponents of a voter initiative must submit petitions bearing the signatures of a certain number of registered voters to the Bureau of Elections within a timeframe set by the Legislature. To qualify for the November 2018 ballot, the magic number of signatures required is 252,523. In November 2017, Taxpayers timely submitted 50,483 petition sheets containing 382,700 elector signatures.

The Bureau of Elections examined the petition sheets and discarded those that were torn, mutilated, or otherwise obviously ineligible for signature counting. Bureau staff twice randomly sampled the remaining signatures to verify their validity. The Bureau projected that Taxpayers had gathered 268,403 valid signatures, more than enough to qualify their initiative for the ballot.

Jobs challenged the petitions on several grounds, including that 18 petition circulators certified that they resided at addresses Jobs believed likely fraudulent. According to Jobs, these circulators wrote down residence locations including a UPS Store, a motel, an auto repair shop, and a vacant, uninhabited piece of land. If valid, Jobs's challenge to the circulators would disqualify 295 petition sheets.[1]

Taxpayers responded that MCL 168.544c, the statute governing petitions and circulators, does not require a circulator to provide *any* residential address at all. The Senate Majority Leader requested an Attorney General Opinion on this question. Eric Restuccia, the Chief Legal Counsel for the Department of the Attorney General, opined that while circulators must provide their residential addresses on the petition forms, the penalty for failing to do so (or for providing fraudulent information) does not include nullifying elector signatures. After considering the arguments of the parties and Restuccia's opinion, the Bureau of Elections recommended that the Board of Canvassers reject the address-related challenges.

The Board of Canvassers met on April 26, 2018, and voted on whether to certify the petition. Two members voted in favor, and two were opposed. The deadlock precludes certification of the petition for the ballot. This mandamus action followed.

II

Our task is to decide whether the Board of Canvassers has a clear legal duty to certify the petition and submit it to the Legislature for consideration. See Const 1963, art 2, § 9. We review this question de novo, meaning that we consider it independently of the decisions reached by the Bureau of Elections or the Board of Canvassers. *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 491-492; 688 NW2d 538 (2004). Mandamus is the proper remedy for a party aggrieved by an election official's inaction. *Citizens Protecting Michigan's Constitution v Secretary of* State, 280 Mich App 273, 283-284; 761 NW2d 210

---

[1] We take no position on whether the challenged addresses were truly fraudulent. While it is reasonable to conclude that a circulator did not actually reside on a piece of vacant land, a hotel address does not strike us as necessarily deceptive or dishonest. We need not further consider this aspect of Jobs's arguments as the validity of the addresses does not factor into our analysis.

(2008). Our analysis requires us to interpret MCL 168.544c, which we also perform de novo. *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 598; 822 NW2d 159 (2012).

III

Petition circulators must certify that they are at least 18 years of age and a United States citizen. They must further attest that the signatures they gathered were made in their presence, the circulator "has neither caused nor permitted a person to sign the petition more than once and has no knowledge of a person signing the petition more than once," and that the signatures are genuinely those of registered electors. MCL 168.544c(1). This statute sets forth the "form" for a petition. The form includes the following signature block and "warning" applicable to circulators:



(Printed Name and Signature of Circulator)          (Date)

(Complete Residence Address (Street and Number or Rural Route))
Do not enter a post office box

(City or Township, State, Zip Code)

(County of Registration, if Registered to Vote, of a Circulator who is not a Resident of Michigan)

> Warning – A circulator knowingly making a false statement in the above certificate, a person not a circulator who signs as a circulator, or a person who signs a name other than his or her own as a circulator is guilty of a misdemeanor. [*Id.*]

The parties' disagreement begins with the significance of the space designated for the circulator's "complete residence address." MCL 168.11, a statute contained within Michigan's election law, defines "residence" as "that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging." According to Jobs, a number of the circulators listed obviously phony addresses. Jobs tested this hypothesis by sending certified letters to circulators it believed had inaccurately certified their residence locations. A substantial number were returned as undeliverable. Absent a genuine address, Jobs urges, the Board has no ability to contact a circulator regarding any irregularities found on the petition sheet. Taxpayers replies that although the form provides space for a circulator's address, the balance of the statute does not mandate that a circulator include any address information at all.

We need not resolve this dispute. Regardless of whether an address is statutorily required, the remedies for failing to include one (or for inserting a fraudulent residence location) do not include striking otherwise valid elector signatures.

-3-

We draw our conclusion from other sections of MCL 168.544c, which generally "details the requirements for a valid nominating petition." *People v Hall*, 499 Mich 446, 452; 884 NW2d 561 (2016). This statute also covers the form of initiative petitions, describes circulation requirements, and establishes punishments for those who break the rules. Several subsections specifically address the obligations of circulators and the penalties for circulators' infractions; those are subsections that guide us.

Circulators need not be residents of Michigan, but they must agree to accept the jurisdiction of this state for the purposes of any legal proceedings concerning the petition sheets they certify. MCL 168.544c(3). Every petition must be signed and dated by the circulator before being filed, and a circulator may not obtain signatures on a petition after signing and dating it. MCL 168.544c(5). "A filing official shall not count electors' signatures that were obtained after the date the circulator signed the certificate or that are contained in a petition that the circulator did not sign and date." *Id*.

MCL 168.544c(8) identifies four prohibitions applicable to "individual[s]." Although the term is not defined in the election laws, its context demonstrates that it refers to those who sign petitions and, in some circumstances, circulators:

> An individual shall not do any of the following:
>
> (a) Sign a petition with a name other than his or her own.
>
> (b) Make a false statement in a certificate on a petition.
>
> (c) If not a circulator, sign a petition as a circulator.
>
> (d) Sign a name as circulator other than his or her own. [*Id*.]

Subsection (8) prohibits a circulator from making a false statement in a certificate or on a petition, and from using someone else's name when signing a petition as a circulator. Assuming for the sake of argument that a circulator is legally required to enter his or her address on a certificate, it makes sense that recording a fake address would qualify as a "false statement" under subsection (8)(b). But these suppositions do not take us where Jobs would like us to go.

In MCL 168.544c(9)-(12), the Legislature codified the punishments for those who disobey the rules governing the signing and circulation of petitions. Subsection (9) establishes a penalty for simple violations of subsection (8): "An individual who violates subsection (8) is guilty of a misdemeanor punishable by a fine of not more than $500.00 or imprisonment for not more than 93 days, or both." MCL 168.544c(9). Notably absent from this subsection is any mention of striking signatures or petition sheets.

A second penalty provision is triggered by more serious violations of subsection (8). Those who commit knowing and intentional violations of its commandments are subject to having their gathered signatures or their candidacy disqualified:

> If after a canvass and a hearing on a petition under [MCL 168.476 or MCL
> 168.552] the board of state canvassers determines that an individual has

-4-

knowingly and intentionally failed to comply with subsection (8), the board of state canvassers may impose 1 or more of the following sanctions:

(a) Disqualify obviously fraudulent signatures on a petition form on which the violation of subsection (8) occurred, without checking the signatures against local registration records.

(b) Disqualify from the ballot a candidate who committed, aided or abetted, or knowingly allowed the violation of subsection (8) on a petition to nominate that candidate.[2] [MCL 168.544c(10).]

These penalty provisions are narrowly drawn. Even in the event of knowing and intentional violations of the law, the Legislature omitted from the list of punishments an automatic disqualification of signatures. Instead, only "obviously fraudulent signatures" may be stricken. And Jobs does not contend that the petitions contain any "obviously fraudulent signatures" missed through the Board's routine canvass processes.

Subsection (11) creates a penalty that comes into play when an organization or person supporting the petition drive knew of a violation of subsection (8) before the petition was filed, but failed to report it to the secretary of state or another official named in the section. In that circumstance, the Legislature opened the door to a misdemeanor conviction. And the Legislature granted the Board of Canvassers the ability to add additional punishment for knowing and intentional lawbreakers, including a fine, a charge for the cost of canvassing the petition form on which the violation occurred, and disqualification from collecting signatures for four years. MCL 168.544c(12)(a)-(c). As in subsection (10), "obviously fraudulent signatures" may be disqualified. MCL 168.544c(12)(d). But again, these sanctions do not encompass eliminating valid signatures on a petition circulated by someone who has violated the law.

The Legislature decreed that certain other election law violations *do* result in the elimination of valid signatures. This penalty is mandatory when a circulator fails to sign and date a petition sheet and the signatures were obtained "after the date the circulator signed the certificate or that are contained in a petition that the circulator did not sign and date." MCL 168.544c(5). And if an elector (signer) of a petition fails to include his or her signature, street address, or the date of signing, the signature is invalid "and shall not be counted by a filing official." MCL 168.544c(2).

The presence of these penalties aids our resolution of this case. A rule often applied by judges evaluating the meaning of statutory text provides that if the Legislature omitted

---

[2] MCL 168.476 requires the Board of Canvassers to "canvass the petitions to ascertain if the petitions have been signed by the requisite number of qualified and registered electors." MCL 168.476(1). MCL 168.552 does not apply to state-wide elections.

something from a statute, it intended to do so.[3]  In applying that rule we focus on whether it is sensible to infer that the Legislature left out a sanction in one section of the law because it meant to.

The statute governing the rules that circulators must follow creates specific penalties for negligent and intentional malfeasance.  Those penalties do not encompass the negation of elector signatures except in two distinct circumstances: when a circulator collects signatures after signing and dating a petition, or fails to sign the sheet entirely.  An elector who omits critical information will also forfeit his or her right to petition.  The presence of these weighty punishments in one subsection and their absence in others strongly suggests a deliberate legislative choice.  This Court has summarized that when the Legislature omits a particular penalty provision in one part of a statute but includes it in another, we should presume the judgment to have been purposeful.  *People v Barrera*, 278 Mich App 730, 741-742; 752 NW2d 485 (2008).

Jobs asks us to find a penalty where none exists.  "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself."  *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002), superseded in part on other grounds as noted in *Bush v Shabahang*, 484 Mich 156; 772 NW2d 272 (2009).  Michigan's election laws make no allowance for striking elector signatures in the event that a circulator records an incorrect address, and nothing in the relevant statutes conveys any intent to disenfranchise electors who were unaware of a circulator's error or infraction.

Because the Board of Canvassers had a clear legal duty to certify Taxpayers' petition, we grant relief on the complaint for mandamus, and give this judgment immediate effect.  MCR 7.215(F)(2).

/s/ Elizabeth L. Gleicher
/s/ Peter D. O'Connell
/s/ Jonathan Tukel

---

[3] This rule, or canon, is referred to in our caselaw by its Latin name, *expressio unius est exclusio alterius*, "the expression of one thing suggests the exclusion of all others" *People v Wilson*, 500 Mich 521, 526; 902 NW2d 378 (2017) (quotation marks and citation omitted).