*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

T. P. NYKORIAK,

Plaintiff-Appellant,

v

BENNY NAPOLEON, WAYNE COUNTY CLERK, and WAYNE COUNTY BOARD OF ELECTION COMMISSIONERS,

Defendants-Appellees.

FOR PUBLICATION
October 22, 2020
9:20 a.m.

No. 354410
Wayne Circuit Court
LC No. 20-008162-AW

Before: LETICA, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the circuit court order denying his complaint and motion for a writ of mandamus seeking to compel defendants, the Wayne County Clerk (Clerk) and the Wayne County Board of Election Commissioners (Board) (collectively "Wayne County defendants"), to reject a facially defective election form and disqualify defendant Benny Napoleon (Napoleon) as a competing candidate in the election for the office of Wayne County Sheriff. We affirm.

## I. BACKGROUND

Plaintiff, a candidate for the Democratic primary election, filed a complaint seeking a writ of mandamus to compel the Wayne County defendants to disqualify incumbent candidate, Napoleon, based on an allegedly facially defective Affidavit of Identity (AOI). Specifically, plaintiff alleged that Napoleon's AOI was defective because it was not properly notarized. Defendants responded that the AOI was not defective and that plaintiff' claim was barred by the doctrine of laches.

-1-

Following a hearing, the circuit court agreed with defendants and denied plaintiff's complaint and related motions. This appeal followed and we granted immediate consideration. *Nykoriak v Napoleon*, unpublished order of the Court of Appeals, entered August 14, 2020 (Docket No. 354410).[1]

## II. MANDAMUS

Plaintiff argues that the circuit court erred by failing to issue a writ of mandamus directing the Wayne County defendants to disqualify Napoleon as a candidate in the election for Wayne County Sheriff on the basis of his facially defective AOI. We disagree.

"This Court reviews for an abuse of discretion a trial court's grant or denial of a writ of mandamus. An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 378; 909 NW2d 1 (2017) (quotation marks and citations omitted). "We review de novo, as questions of law, whether defendants have a clear legal duty to perform and whether plaintiff has a clear legal right to performance of any such duty." *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). We also review de novo the interpretation of statutes. *Protecting Mich Taxpayers v Bd of State Canvassers*, 324 Mich App 240, 244; 919 NW2d 677 (2018).

As we explained in *O'Connell v Dir of Elections*, 317 Mich App 82, 90-91; 894 NW2d 113 (2016):

> Mandamus is an extraordinary remedy . . . . Thus, issuance of this writ is proper only if (1) the party seeking the writ has a clear, legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists, legal or equitable, that might achieve the same result. Within the meaning of the rule of mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided. [Quotation marks and citations omitted.]

"A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Berry*, 316 Mich App at 42 (quotation marks omitted).

Plaintiff argues that Napoleon's AOI did not comply with MCL 168.558. Accordingly, this issue involves the interpretation of that statute.

---

[1] Plaintiff subsequently filed a bypass application for leave to appeal in our Supreme Court along with a motion for immediate consideration. The Court granted the motion for immediate consideration, but denied bypass. *T. P. Nykoriak v Napoleon*, __ Mich __; __ NW2d __ (2020) (Docket No. 161990).

This Court's primary task in interpreting and applying a statute is to discern and give effect to the intent of the Legislature. The words of the statute are the most reliable evidence of the Legislature's intent and this Court must give each word its plain and ordinary meaning. In interpreting the statute at issue, [this Court] . . . consider[s] both the plain meaning of the critical words or phrase as well as its placement and purpose in the statutory scheme. When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. [*Stumbo v Roe*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 353695); slip op at 3-4 (quotation marks and citations omitted).]

MCL 168.558 relates to the filing of petitions, fees, and affidavits for primary elections and provides:

(1) When filing a nominating petition, qualifying petition, filing fee, or affidavit of candidacy for a federal, county, state, city, township, village, metropolitan district, or school district office in any election, a candidate shall file with the officer with whom the petitions, fee, or affidavit is filed 2 copies of an affidavit of identity. A candidate nominated for a federal, state, county, city, township, or village office at a political party convention or caucus shall file an affidavit of identity within 1 business day after being nominated with the secretary of state. The affidavit of identity filing requirement does not apply to a candidate nominated for the office of President of the United States or Vice President of the United States.

(2) An affidavit of identity must contain the candidate's name and residential address; a statement that the candidate is a citizen of the United States; the title of the office sought; a statement that the candidate meets the constitutional and statutory qualifications for the office sought; other information that may be required to satisfy the officer as to the identity of the candidate; and the manner in which the candidate wishes to have his or her name appear on the ballot. If a candidate is using a name that is not a name that he or she was given at birth, the candidate shall include on the affidavit of identity the candidate's full former name.

(3) The requirement to indicate a name change on the affidavit of identity does not apply if the name in question is 1 of the following:

(a) A name that was formally changed at least 10 years before filing as a candidate.

(b) A name that was changed in a certificate of naturalization issued by a federal district court at the time the individual became a naturalized citizen at least 10 years before filing as a candidate.

(c) A name that was changed because of marriage.

(d) A name that was changed because of divorce, but only if to a legal name by which the individual was previously known.

-3-

(e) A name that constitutes a common law name as provided in section 560b.

(4) An affidavit of identity must include a statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, MCL 169.201 to 169.282, have been filed or paid; and a statement that the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both. If a candidate files the affidavit of identity with an officer other than the county clerk or secretary of state, the officer shall immediately forward to the county clerk 1 copy of the affidavit of identity by first-class mail. The county clerk shall immediately forward 1 copy of the affidavit of identity for state and federal candidates to the secretary of state by first-class mail. An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section, or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section.

(5) If petitions or filing fees are filed by or on behalf of a candidate for more than 1 office, either federal, state, county, city, village, township, metropolitan district, or school district, the terms of which run concurrently or overlap, the candidate so filing, or on behalf of whom petitions or fees were so filed, shall select the 1 office to which his or her candidacy is restricted within 3 days after the last day for the filing of petitions or filing fees unless the petitions or filing fees are filed for 2 offices that are combined or for offices that are not incompatible. Failure to make the selection disqualifies a candidate with respect to each office for which petitions or fees were so filed and the name of the candidate must not be printed upon the ballot for those offices. A vote cast for that candidate at the ensuing primary or general election must not be counted and is void.

(6) A violation of this section for perjury is distinct and separate from any violation of the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282.

As we explained in *Stumbo*, ___ Mich App at ___; slip op at 2-3:

Under MCL 168.558(1), a candidate filing a nominating petition or a filing fee in lieu of nominating petition must also file an AOI, containing the candidate's name and address, among other information useful to establishing the candidate's identity. The Secretary of State provides a form AOI for use by candidates. This form AOI includes a space designated for the candidate's signature. To the immediate right of the signature space is a space designated for the candidate to record the date he or she signed the AOI. The form AOI also provides space for a notary to attest to the identity of the affiant signing the AOI.

The parties do not dispute that strict compliance with MCL 168.558 is required. See *Stumbo*, ___ Mich App at ___; slip op at 1 ("Our Supreme Court instructs that a candidate for elected office must strictly comply with the pre-election form and content requirements identified in the Michigan Election Law, MCL 168.1 *et seq.*, in the absence of any statutory language expressly indicating that substantial compliance with the statute's requirement suffices."). Nor do the parties dispute that this statute requires notarization as defined by the Michigan law on notarial acts, MCL 55.261 *et seq.*[2] MCL 55.287, relating to the signature and statement requirements, provides:

> (1) A notary public shall place his or her signature on every record upon which he or she performs a notarial act. The notary public shall sign his or her name exactly as his or her name appears on his or her application for commission as a notary public.

> (2) On each record that a notary public performs a notarial act and immediately near the notary public's signature, as is practical, the notary public shall print, type, stamp, or otherwise imprint mechanically or electronically sufficiently clear and legible to be read by the secretary and in a manner capable of photographic reproduction all of the following in this format or in a similar format that conveys all of the same information:

> (a) The name of the notary public exactly as it appears on his or her application for commission as a notary public.

> (b) The statement: "Notary public, State of Michigan, County of _____.".

> (c) The statement: "My commission expires _____.".

> (d) If performing a notarial act in a county other than the county of commission, the statement: "Acting in the County of _____.".

> (e) The date the notarial act was performed.

> (f) If applicable, whether the notarial act was performed using an electronic notarization system under section 26a or performed using a remote electronic notarization platform under section 26b.

> (3) A notary public may use a stamp, seal, or electronic process that contains all of the information required under subsection (2). However, the notary public

---

[2] We are cognizant that on April 8, 2020, in response to the COVID-19 pandemic, the Governor signed Executive Order 2020-41, temporarily suspending strict compliance with MCL 55.261 *et seq.,* "to the extent it requires a notary to be in the physical presence of an individual seeking the notary's services," and, in lieu thereof, authorizing a two-way real-time audiovisual process for the performance of a notarial act.

shall not use the stamp, seal, or electronic process in a manner that renders anything illegible on the record being notarized. A notary public shall not use an embosser alone or use any other method that cannot be reproduced.

(4) The illegibility of the statements required under subsection (2) does not affect the validity of the transaction or record that was notarized.

In *Berry*, 316 Mich App at 40, the plaintiff, a registered voter, filed a complaint seeking a writ of mandamus to compel the Wayne County defendants not to place the names of two candidates, the intervening defendants, on the ballot for the August 2, 2016 primary election. It was undisputed that the affidavits filed by the intervening defendants did not provide a precinct number as required by MCL 168.558(2). *Id*. We concluded that because the intervening defendants failed to comply with MCL 168.558(2), the Wayne County defendants had a clear legal duty not to certify their names under MCL 168.558(4). *Id*. at 44. We also concluded that completing a facial review of the affidavits was a ministerial task because they were facially defective. *Id*. at 45. We further concluded that the plaintiff lacked an adequate legal or equitable remedy that might achieve the same result as mandamus. *Id*. Finally, we concluded that the plaintiff had "a clear legal right to performance of the Wayne County defendants' statutory duties." *Id*. at 45, 51.

In *Stumbo*, ___ Mich App at ___; slip op at 1, we recognized that "[t]he failure to supply a facially proper Affidavit of Identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot." In that case, the parties agreed that the defendant's AOI contained "a facially-obvious defect" in that "[t]he date that accompanies her signature differ[ed] from the date of the notarization." *Id*. at ___; slip op at 4. We concluded, however, that the AOI was "strictly compliant with the requirements of MCL 168.558." *Id*. at ___; slip op at 4. We explained:

There is no question that [the defendant] signed her AOI. There is also no question that the notarization on the AOI is facially compliant with MCL 55.285(1)(b), (4), (6)(c), which authorizes a notary to witness and attest to a signature made in the presence of the notary. A review of the AOI shows that notary Brent W. Royal attests in that notarization that [the defendant] signed her AOI before him on April 21, 2020. Thus, we conclude that [the defendant] strictly complied with the attestation requirement implicit in MCL 168.558. [*Id*. at ___; slip op at 5.]

We held "that as long as the AOI has been signed by the candidate and notarized in a manner allowed under MCL 55.285, the AOI strictly complies with the attestation requirements implicit in MCL 168.558 and the clerk has a legal duty to certify the affiant to the board of election commissioners for placement on the ballot." *Id*. at ___; slip op at 2.

In this case, plaintiff argues that Napoleon's AOI is facially defective because it does not include a notary signature and date of notarization as required under MCL 55.285. A review of the AOI shows that the notary did not sign and date the AOI in the specific locations designated for the notary signature and date. Rather, the notary's signature appears in the "for office use only" section on the line indicating "received by." The date of "4/15/2020" appears on the line

designated as the "date of filing." The AOI was also stamped by the notary. The stamp included the date on which the notary's commission expires and the county in which she was acting.

With regard to the signature, plaintiff does not dispute that the signature on the "received by" line was that of the notary. That is, there is no dispute that the notary actually signed the AOI. We agree with defendants that there is no statutory requirement regarding the location of the notary's signature; therefore, the notary's signature in the "for office use only" section is sufficient to satisfy the requirement of MCL 55.287(1).

Likewise, we conclude that the AOI states the date that the notarial act was performed, and, therefore, is facially compliant with MCL 55.287(2)(e). Again, the line designated for the date of notarization was left blank. However, in the "for office use only" section, the date of "4/15/2020" was written on the line designated for the "date of filing." Napoleon signed the AOI on April 15, 2020, the same date that the AOI was filed. The notary named on the AOI is the Deputy Director in the Office of the Wayne County Clerk, Elections Division. That being so, Napoleon either presented in-person to the Wayne County Clerk's Office[3] or complied with the process described in Executive Order 2020-41 on April 15. Stated otherwise, the date of the filing was the same date of the notarial act. Accordingly, the "4/15/2020" on the "date of filing" line, and next to the clerk/notary's signature, is the same date that the clerk notarized the AOI. Because the date the notarial act was performed is reflected on the AOI, the AOI facially complied with MCL 55.287(2)(e).

To summarize, the AOI was facially compliant with the requirements under MCL 55.287 because it contained: (1) the notary's signature; (2) the notary's name; (3) the county of the notary's commission; (4) the expiration date of the notary's commission; (5) the county the notary acted in; and (6) the date the notarial act was performed. Although certain of these requirements were not completed in the box provided, they were nonetheless on the form, rendering it facially compliant. To conclude otherwise would elevate form over substance. Because the AOI complied with the requirements of MCL 168.558, we conclude that the Wayne County defendants did not have a clear legal duty to remove Napoleon's name from the ballot, and the circuit court correctly concluded that plaintiff was not entitled to a writ of mandamus.

### III. LACHES

Because plaintiff is not entitled to a writ of mandamus on the merits, we need not address the parties' arguments regarding laches. However, even if we accepted plaintiff's challenge to Napoleon's AOI, we would nevertheless affirm because the circuit court did not err in determining that plaintiff's claim was barred by the doctrine of laches.

---

[3] Plaintiff's pleadings reflect that plaintiff arranged for an in-person meeting by making an appointment with the Wayne County Clerk's Office.

As explained in *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 589; 939 NW2d 705 (2019):

> Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time. To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay. Typically, [l]aches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier. [Quotation marks and citations omitted; alterations in original.]

"This doctrine applies to cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 252; 704 NW2d 117 (2005) (quotation marks and citation omitted). The doctrine of laches applies in actions in which equitable relief is sought. MCL 600.5815. Moreover, in election cases, MCL 691.1031 creates a rebuttal presumption of laches:

> In all civil actions brought in any circuit court of this state affecting elections, dates of elections, candidates, qualifications of candidates, ballots or questions on ballots, there shall be a rebuttable presumption of laches if the action is commenced less than 28 days prior to the date of the election affected. This section shall not apply to actions brought after the date of the affected election.

Plaintiff filed this action on June 29, 2020, more than 28 days before the date of the August 4th primary election. Therefore, a rebuttable presumption of laches does not apply in this case. But, contrary to plaintiff's assertion, this does not mean that laches does not apply as a matter of law. Although there is no rebuttable presumption of laches in this case, the doctrine may still apply.

In this case, Napoleon's AOI was filed on April 15, 2020. Plaintiff filed objections to the AOI with the Clerk on April 24, 2020, and with the Board on June 5, 2020, but no action was taken by the Wayne County defendants. Plaintiff then waited another 24 days before bringing suit in the circuit court. Plaintiff alleged that, during this time, he considered his options and hired counsel, who investigated his claim, conducted research, and drafted and filed his pleadings. By this time, the printing of the ballots was completed and the ballots had been delivered to the local clerks.

The circuit court did not err by finding unexcused or unexplained delay, particularly in light of plaintiff's prior experience with elections. At the hearing on plaintiff's motion, the circuit court questioned the assertion made by plaintiff's attorney that it took time to research the issue, asking "what amount of research needed to be done in this particular matter other than what the notary statute requires?" Although the circuit court did not make any specific finding regarding the reason for plaintiff's delay, it is apparent that the circuit court did not find the argument persuasive. We agree that the explanation for the delay provided by plaintiff's attorney was not particularly compelling given the single issue in dispute and its nature as an election matter. In addition, defendants sufficiently established a corresponding change in position that resulted in

prejudice based on the printing and delivery of ballots to local clerks. Therefore, the circuit court did not err by ruling that the doctrine of laches applied to bar plaintiff's "11th hour" challenge.[4]

Affirmed. No costs, a significant question of public interest being involved.


/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ James Robert Redford

---

[4] We reject the Wayne County defendants' argument that this appeal is moot, as we believe that this issue is "publicly significant, likely to recur, and yet likely to evade judicial review." *Barrow v Detroit Election Comm'n*, 305 Mich App 649, 659-660; 854 NW2d 489 (2014) (quotation marks omitted) (reviewing a similar issue under this doctrine more than six months after the winning candidates took office).